**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER A. PHILLIPS, | ) | |
| DEANDRE L. BLUE, | ) | |
| HEATHER DE MIAN, | ) | |
| BRIAN C. LOHMANN, | ) | |
| JEROME TOLLIVER, JR., | ) | |
| EBONY WILLIAMS, | ) | |
| A.T., a minor by and through his next friend | ) | |
|      Alice Tyler, | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No.: 4:16-cv-00084 RLW |
| | ) | |
| CITY OF FERGUSON, MISSOURI, | ) | |
| EDDIE BOYD III, | ) | |
| DUSTIN BURNES, | ) | |
| HARRY DILWORTH, | ) | |
| KEVIN HAMMOND, | ) | |
| JOSHUA MACE, | ) | |
| ERIN O'BRIEN, | ) | |
| ANDREW MOULTON | ) | |
| | ) | |
|     Defendants. | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiffs amend their Complaint as follows:

**INTRODUCTION**

1.      Plaintiffs were peacefully protesting at the Ferguson Police Department on February 9, 2015, the six-month anniversary of Michael Brown's death.

2.      Defendants arrested Plaintiffs without lawful justification and in retaliation for Plaintiffs' exercise of their First Amendment rights. Further, Defendants destroyed evidence in an attempt to sustain criminal prosecutions against Plaintiffs.

3.      Over a period of nearly a year, Defendant City of Ferguson ("*Ferguson*" or "*the City*") prosecuted Plaintiffs Blue, DeMian, Lohmann, Phillips, Tolliver, and Williams despite that Defendants repeatedly and persistently demonstrated to the City that there was no legal or factual basis for the continued prosecution, including sharing 11 videos from 4 separate individuals that established that Defendants had not broken any laws.

4.      On January 21, 2016, moments before the trial was to begin, the City dismissed all charges without explanation.

5.      Defendants also arrested A.T. and referred his prosecution to the St. Louis County juvenile court system, which subsequently declined to prosecute A.T.

6.      This is a civil action for violation of the civil rights of the Plaintiffs under the First, Fourth, and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983.

## PARTIES

7.      Plaintiff Deandre Blue is an African-American citizen of the United States of America and a resident of St. Louis County, Missouri.

8.      Heather De Mian is a disabled citizen of the United States of America and a resident of St. Charles County, Missouri.

9.      Brian Lohmann is an African-American citizen of the United States of America and a resident of St. Louis County, Missouri.

10.     Christopher Phillips is an African-American citizen of the United States of America and a resident of St. Louis County, Missouri.

11.     Jerome Tolliver, Jr. is an African-American citizen of the United States of America and a resident of St. Louis County, Missouri.

2

12.     Ebony Williams is an African-American citizen of the United States of America and a resident of St. Louis County, Missouri.

13.     A.T. is a 16-year-old African-American citizen of the United States of America and a resident of St. Charles County, Missouri. At the time of his arrest, he was 14 years old.

14.     Alice Tyler is an African-American citizen of the United States of America and a resident of St. Charles County, Missouri. Alice Tyler is A.T.'s mother.

15.     Defendant City of Ferguson, Missouri, is a body politic and corporate organized and existing pursuant to Missouri law.

16.     Harry Dilworth is a sworn peace officer, Sergeant of Police, and supervisor employed by the City of Ferguson. All of Defendant Dilworth's actions set forth in this Complaint were done under color of law. Harry Dilworth is sued in his individual capacity.

17.     Eddie F. Boyd III is a sworn peace officer employed by the City of Ferguson. All of Defendant Boyd's actions set forth in this Complaint were done under color of law. Eddie Boyd is sued in his individual capacity.

18.     Dustin Burnes is a sworn peace officer employed by the City of Ferguson. All of Defendant Burnes's actions set forth in this Complaint were done under color of law. Dustin Burnes is sued in his individual capacity.

19.     Kevin Hammond is a sworn peace officer employed by the City of Ferguson. All of Defendant Hammond's actions set forth in this Complaint were done under color of law. Kevin Hammond is sued in his individual capacity.

20.     Joshua Mace is a sworn peace officer employed by the City of Ferguson. All of Defendant Mace's actions set forth in this Complaint were done under color of law. Joshua Mace is sued in his individual capacity.

21.     Erin O'Brien is a sworn peace officer employed by the City of Ferguson. All of Defendant O'Brien's actions set forth in this Complaint were done under color of law. Erin O'Brien is sued in his individual capacity.

22.     Anthony Moulton was a corrections officers employed by the City of Ferguson. All of Defendant Moulton's actions set forth in this Complaint were done under color of law. Anthony Moulton is sued in his individual capacity.

23.     Each Defendant acted individually and together in concert with the other Defendants.

## JURISDICTION AND VENUE

24.     This cause is brought pursuant to 42 U.S.C. § 1983. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1343. Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b), since the Defendants are located, and all of the incidents giving rise to this suit occurred, in this judicial district.

## FACTS

25.     On August 9, 2014, a Ferguson police officer shot and killed Michael Brown, who was unarmed.

26.     As a result, there have been frequent demonstrations on the public streets and sidewalks of Ferguson.

27.     On August 15, 2014, Ferguson signed an agreement in *Mustafa v. County of St. Louis, et. al.* 4:14CV01410 JAR (E.D. Mo. Aug. 21, 2014) (Consent Agreement).

28.     The agreement stated that "[p]arties acknowledge and agree that the media and members of the public have a right to record public events without abridgement unless it obstructs the activity or threatens the safety of others, or physically interferes with the ability of law

enforcement officers to perform their duties." *See* Complaint, Doc. 1, Exhibit A, *Mustafa v. County of St. Louis, et. al.* 4:14CV01410 JAR (E.D. Mo. Aug. 21, 2014) ("*Consent Agreement"*).

29.     On November 21, 2014, this Court entered an order permanently enjoining Ferguson and the other defendants "from enforcing a policy or custom of interfering with individuals who are photographing or recording at public places but who are not threatening the safety of others or physically interfering with the ability of law enforcement to perform their duties." *See* Complaint, Doc. 1, Exhibit B, *Mustafa v. County of St. Louis, et. al.* 4:14CV01410 JAR (E.D. Mo. Aug. Nov. 21, 2014) ("*Order of Judge enjoining the City of Ferguson*").

30.     Less than three months later, on the evening of February 9, 2015, approximately 10-15 individuals gathered outside of the Ferguson Police Department ("*FPD*") at 222 South Florissant Road to mark the six-month anniversary of the death of Michael Brown.

31.     During the peaceful protest, Defendants arrested Plaintiffs.

32.     In violation of this Court's November 21, 2014 order, Defendants arrested Plaintiffs Phillips, De Mian, and Lohmann while they were recording the actions of the arresting officers.

33.     At approximately 7:40 pm, an unknown person emerged from the Ferguson Fire Department, which is next door to FPD, and pointed a camera at the the protesters. The unknown person yelled that the protesters would all soon be going to jail.

34.     Less than five minutes later, Sgt. Harry Dilworth ("*Defendant Dilworth*") arrived at the FPD parking lot. Defendant Dilworth contacted Officer Dustin Burnes ("*Defendant Burnes*"), Officer Kevin Hammond ("*Defendant Hammond*"), Officer Joshua Mace ("*Defendant Mace*"), Officer Erin O'Brien ("*Defendant O'Brien*"), and Officer Eddie Boyd III ("*Defendant Boyd*") (collectively "*Defendant officers*"), all of whom joined him on the FPD parking lot shortly thereafter.

35.    As the Defendant officers conferred on the FPD parking lot, the remaining protesters stood on the public sidewalk in front of the FPD parking lot and on the Andy Wurm Tire & Wheel ("*Andy Wurm*") parking lot directly across from FPD on the west side of South Florissant Road. Andy Wurm is a private establishment and was closed for business at all times described in this Complaint.

36.    At no point were any protesters acting in an unlawful manner, blocking traffic, or acting in a violent manner.

37.    After conferring for several minutes, Defendant Dilworth directed the assembled officers to begin making arrests.

38.    The Defendant officers, driving three marked FPD SUVs, activated the lights atop the patrol vehicles and accelerated across South Florissant Road into the Andy Wurm parking lot. As they exited their vehicles, one of the officers yelled, "Everybody here's going to jail!"

39.    The Defendant officers gave no other warnings and did not ask the protesters to disperse before arresting Plaintiffs.

**Ferguson Destroys Evidence**

40.    Between March 19 and March 27, 2015, each Plaintiff filed his or her initial request for discovery. The request for discovery included all video evidence in Ferguson's possession related to the Plaintiff's arrests.

41.    Subsequently, the Ferguson Prosecuting Attorney stated that it was Ferguson Police Department policy to destroy any videos in the Police Department's possession after 30 days unless a defendant's counsel explicitly requested said videos.

42.     In response, on April 21, 2015, Plaintiffs filed a second request for discovery. On July 16, 2015, Plaintiffs filed a third request for discovery because Ferguson had yet to produce a single piece of requested evidence.

43.     On July 31, 2015, because Ferguson had yet to produce any evidence other than the police report, which was incomplete because it was missing the photo of Officer Hammond's alleged injuries, Plaintiffs filed a Notice of Hearing for August 25, 2015, stating that Plaintiffs would be requesting that the Court order Ferguson to produce the requested evidence, including body camera videos, dash camera videos, videos from any camera positioned on the Ferguson police department, and any other videos or photographs in the possession of Ferguson or its employees.

44.     On September 4, 2015, the St. Louis Post-Dispatch published an article about this matter. The article stated:

> On Thursday, in response to a records request for video from the body camera worn by the officer who arrested De Mian, the city released a statement from police saying the department has no video from that night.
> *See* Stephen Deere, *Ferguson Police Say They Don't Have Video From Protester's Arrest*, Sept. 4, 2015, http://www.stltoday.com/news/local/crime-and-courts/ferguson-police-say-they-don-t-have-video-from-protester/article_2c667d3a-31d8-570f-a9ec-33b92fc3d1df.html

45.     On October 27, 2015, Plaintiffs produced 11 videos from 4 individuals that documented the arrests. *See* Supplemental, Doc. 2, Exhibits C – M, Videos produced by Plaintiffs in municipal proceedings.

46.     That same day, Ferguson was scheduled to produce all videos and documentary evidence purportedly in its possession. Instead, Ferguson only produced footage from Defendant Dilworth's and Mace's body cameras. *See* Supplemental Evidence, Doc. 2, Exhibits N – P, Videos submitted by Ferguson in municipal proceedings.

47.     The footage from Defendant Mace's body camera had been edited to begin after he began making arrests.

48.     Ferguson stated that it had lost or destroyed all of the video footage from all of the stationary cameras outside of the FPD and the Ferguson Fire Department; the body camera footage from Defendants Burnes, Hammond, Mace, and O'Brien; and the footage from the dash cameras of the three FPD vehicles used during the arrests.

**Individual Arrests**

A.     **Christopher Phillips**

49.     Christopher Phillips ("*Mr. Phillips*") is a nationally recognized, award winning filmmaker.

50.     Mr. Phillips's films *Ferguson 365* and *Ferguson: 100 Days* have been featured in film festivals and have won awards.

51.     Mr. Phillips was present at the FPD on February 9, 2015 to document the peaceful protest and police response. At no time during the evening of February 9, 2015 was Mr. Phillips engaged in unlawful activity of any sort

52.     Mr. Phillips was filming the arrest of Mr. Tolliver for documentary purposes when Defendant O'Brien approached Mr. Phillips and placed him under arrest.

53.     When Mr. Phillips asked why he was under arrest, Defendant O'Brien responded "Manner of Walking" which is commonly referred to as jaywalking.

54.     In its *Investigation of the Ferguson Police Department*, the U.S. Department of Justice described Ferguson's use of "Manner of Walking" charges as one of several "highly discretionary offenses disproportionately brought against African Americans." *See* Complaint,

Doc. 1, Exhibit Q, U.S. Dep't of Justice, *Investigation of the Ferguson Police Department*, 69 (Mar. 4, 2015).

55.     Neither Defendant O'Brien nor any other officer gave Mr. Phillips any commands before arresting Mr. Phillips.

56.     All of the video evidence provided by the Parties during the criminal prosecution demonstrate that Mr. Phillips was acting in a calm and reasonable manner before his arrest.

57.     Defendants eventually charged Mr. Phillips with Disorderly Conduct.

58.     During the arrest, Defendant O'Brien confiscated Mr. Phillips's professional video equipment.

59.     Mr. Phillips informed Defendant O'Brien that his camera was worth $20,000, and asked if he could put it in his car. Defendant O'Brien responded that it was "too late." Mr. Phillips's camera was taken to the FPD with the rest of his property.

60.     Upon return of the equipment, Mr. Phillips observed that the hard drive of his camera had been removed and somebody had attempted to destroy the hard drive by using some sort of tool. *See* Complaint, Doc. 1, Exhibit R, Pictures of damages to Mr. Phillips's hard drive.

61.     Mr. Phillips then sent the hard drive to the manufacturer for repair.

62.     Once repaired and returned to Mr. Phillips, the hard drive revealed footage from within the FPD that Mr. Phillips had not taken.

63.     This footage demonstrates that someone within the FPD used the camera when it was in evidentiary custody.

64.     On January 21, 2016, without any explanation and moments before the trial, Ferguson dismissed Mr. Phillips's charge.

B.      **Deandre Blue**

65.     Deandre Blue ("*Mr. Blue*") stood in the Andy Wurm parking lot across the street from FPD in the minutes preceding his arrest. At no time during the evening of February 9, 2015 was Mr. Blue engaged in unlawful activity of any sort.

66.     Immediately upon arrival to the Andy Wurm lot, Defendant Mace approached Mr. Blue and placed him under arrest.

67.     Mr. Blue did not attempt to flee and immediately submitted to the arrest.

68.     All of the video evidence provided by the Parties during the criminal prosecution demonstrate that Mr. Blue was acting in a calm and reasonable manner before his arrest.

69.     Neither Defendant Mace nor any other officer gave Mr. Blue any commands before arresting Mr. Blue.

70.     Defendants charged Mr. Blue with Destruction of Property and Disorderly Conduct.

71.     The night before the January 21, 2016 scheduled trial, Ferguson amended the Destruction of Property Charge to Graffiti.

72.     On January 21, 2016, without any explanation and moments before the trial, Ferguson dismissed all of Mr. Blue's charges.

C.      **Heather De Mian**

73.     Heather De Mian ("*Ms. De Mian*") has Vascular Ehlers-Danlos Syndrome, a connective tissue disorder, and consequently relies on a wheelchair for mobility.

74.     Ms. De Mian was live-streaming the Defendant officers while she was positioned on the sidewalk in front of the FPD parking lot. At no time during the evening of February 9, 2015 was Ms. De Mian engaged in unlawful activity of any sort

75.     Ms. De Mian live-streamed using a cell phone camera attached to a metallic unipod, or "selfie stick." When the Defendant officers crossed South Florissant Road in their patrol vehicles, Ms. De Mian also crossed the street and continued recording.

76.     After crossing the street, Ms. De Mian began recording the arrest of Jerome Tolliver ("*Mr. Tolliver*") on the Andy Wurm parking lot. As she recorded Mr. Tolliver's arrest, she told the police, "This is private property. We have permission to be on this property."

77.     At the same time, Kelly Keane ("*Ms. Keane*"), an employee of the Subway restaurant located adjacent to the Andy Wurm lot was on a break.

78.     Ms. Keane observed two officers grab Ms. De Mian's wheelchair handles and forcibly eject Ms. De Mian to the ground and then return the wheelchair to an upright position.

79.     A St. Louis Post-Dispatch photographer captured a photograph of Ms. De Mian on the ground next to her wheelchair. *See* Complaint, Doc. 1, Exhibit S, Photograph of Ms. De Mian taken by Robert Cohen.

80.     No officer gave Ms. De Mian any commands before arresting her.

81.     Defendant Hammond stated in the police report that Ms. De Mian shined a "bright light" into his eyes. *See* Complaint, Doc. 1, Exhibit T, Ferguson Police Department Incident Report at 12.

82.     Notwithstanding the fact that he was standing in between three FPD police vehicles with their head lights and emergency lights activated, Defendant Hammond claimed that he had to cover the light from Ms. De Mian's cell phone to see the other protesters.

83.     Defendant Hammond then stated that he pushed Ms. De Mian's cell phone down and that he looked away.

84.     In the brief moment he looked away, Defendant Hammond stated that he "turned around and saw the female in the wheelchair was now *sitting* on the ground, with her wheelchair still in an upright position next to her." *Id*. (*Emphasis added*). Defendant Hammond provided no description of how Ms. De Mian ended up on the ground.

85.     Defendant Hammond said that after grabbing Ms. De Mian's cell phone, he observed a mark on his hand.

86.     Defendant Dilworth allegedly took a picture of Defendant Hammond's hand although Ferguson stated that it had either lost or destroyed the photograph.

87.     Defendants confiscated Ms. De Mian's cell phone at the time of her arrest.

88.     Upon return of her cell phone, Ms. De Mian observed that the cell phone did not contain any copy of her live-streaming.

89.     Defendants charged Ms. De Mian with Assault on a Law Enforcement Officer and Failure to Comply.

90.     On January 21, 2016, without any explanation and moments before the trial, Ferguson dismissed all of Ms. De Mian's charges.

91.     Upon her release, Ms. De Mian went to a local hospital to receive treatment for injuries she suffered during her arrest and evaluation as to whether she had any undetected injuries due to her Vascular Ehlers-Danlos Syndrome.

**D.     Jerome Tolliver**

92.     Mr. Tolliver stood in the Andy Wurm parking lot across the street from FPD in the minutes preceding his arrest. At no time during the evening of February 9, 2015 was Mr. Tolliver engaged in unlawful activity of any sort.

93.     Immediately upon arrival to the Andy Wurm lot, Defendant Burnes approached Mr. Tolliver and placed him under arrest.

94.     Mr. Tolliver did not attempt to flee and immediately submitted to the arrest.

95.     Neither Defendant Burnes nor any other officer gave Mr. Tolliver any commands before arresting Mr. Tolliver.

96.     All of the video evidence provided by the Parties during the criminal prosecution demonstrate that Mr. Tolliver was acting in a calm and reasonable manner before his arrest.

97.     Defendants charged Mr. Tolliver with Destruction of Property and Disorderly Conduct.

98.     The night before the January 21, 2016 scheduled trial, Ferguson amended the Destruction of Property Charge to Graffiti.

99.     On January 21, 2016, without any explanation and moments before the trial, Ferguson dismissed all of Mr. Tolliver's charges.

**E.     Brian Lohmann**

100.     Brian Lohmann ("*Mr. Lohmann*") was lawfully recording the actions of the Defendant officers at the time of his arrest. At no time during the evening of February 9, 2015 was Mr. Lohmann engaged in unlawful activity of any sort

101.     After recording the arrest of A.T. in a Subway restaurant adjacent to Andy Wurm, Mr. Lohmann trailed Defendant Dilworth and Defendant Moulton.  Defendant Moulton held A.T.'s left arm while Defendant Dilworth held A.T.'s right arm.  Defendant Moulton and Defendant Dilworth walked A.T. to an FPD police vehicle. Defendant Moulton remained with the Defendant officers as they continued to arrest Plaintiffs.

102.     A St. Louis Post-Dispatch photographer captured a photograph of Defendant Moulton assisting with A.T.'s arrest. *See* Complaint, Doc. 1, Exhibit U, Photograph of A.T.'s arrest taken by Robert Cohen.

103.     A.T. was initially cited for Destruction of Property, but the attorney for St. Louis County Juvenile Officer declined to pursue charges.

104.     After A.T. was placed into the patrol vehicle, Mr. Lohmann began recording Ms. De Mian. Ms. De Mian, who was seated on the ground, said to Mr. Lohmann, "Please film my arrest. I would appreciate that."

105.     Mr. Lohmann asked her whether the Defendant officers were attempting to arrest her at that moment, to which she responded that the Defendant officers were.

106.     Immediately as Mr. Lohmann asked Ms. De Mian whether she had been informed of the reason for her arrest, Defendant Burnes approached Mr. Lohmann, put his hand over the camera, and grabbed Mr. Lohmann by the arm. As Mr. Lohmann began to ask what was happening, Defendant O'Brien grabbed Mr. Lohmann's other arm.

107.     Defendants Burnes and O'Brien then pushed Mr. Lohmann to the ground. Within approximately five seconds of the initial contact with Defendant Burnes, Mr. Lohmann was face-down on the ground with his hands behind his back. When Mr. Lohmann asked, "Why am I being arrested?" A Defendant officer yelled, "Stop resisting! You're gonna get tased!

108.     In Defendant Burnes's police report, he states, "I requested Lohmann to place his hands behind his back which he failed to comply with my request."

109.     Further, he states that it is only after issuing this request that he and Defendant O'Brien "attempted to place handcuffs on Lohmann" and that Mr. Lohmann "pulled away from [Defendant Burnes] and was actively resisting."

110.    The video evidence refutes Defendants' accounts: Defendant Burnes gave no orders and a Defendant slammed Mr. Lohmann to the ground while Mr. Lohmann was actively videotaping the Defendant officers' actions.

111.    Mr. Lohmann's arm was stuck under him and he repeatedly told the Defendant officers.

112.    Rather than help Mr. Lohmann extricate his arm, a Defendant officer forcefully placed a knee into Mr. Lohmann's neck causing Mr. Lohmann's face to be smashed into the asphalt.

113.    No officer gave Mr. Lohmann any commands before arresting Mr. Lohmann.

114.    All of the video evidence provided by the Parties during the criminal prosecution demonstrate that Mr. Lohmann was acting in a calm and reasonable manner before his arrest.

115.    Defendants charged Mr. Lohmann with Destruction of Property, Disorderly Conduct, Failure to Comply and Resisting Arrest.

116.    The night before the January 21, 2016 scheduled trial, Ferguson amended the Destruction of Property Charge to Graffiti.

117.    On January 21, 2016, without any explanation and moments before the trial, Ferguson dismissed all of Mr. Lohmann's charges.

**F.    Ebony Williams**

118.    Ebony Williams ("*Ms. Williams*") stood in the Andy Wurm parking lot across the street from FPD in the minutes preceding her arrest. At no time during the evening of February 9, 2015 was Ms. Williams engaged in unlawful activity of any sort

119.    Immediately upon arrival to the Andy Wurm lot, Defendant Burnes approached Ms. Williams and placed her under arrest. Ms. Williams did not attempt to flee and immediately submitted to the arrest.

120.    Neither Defendant Burnes nor any other officer gave Ms. Williams any commands before arresting her.

121.    All of the video evidence provided by the Parties during the criminal prosecution demonstrate that Ms. Williams was acting in a calm and reasonable manner before her arrest.

122.    Defendants charged Ms. Williams with Disorderly Conduct.

123.    On January 21, 2016, without any explanation and moments before the trial, Ferguson dismissed all of Ms. Williams' charges.

**G. A.T.**

124.    A.T. stood in the Andy Wurm parking lot across the street from FPD in the minutes preceding A.T.'s arrest. At no time during the evening of February 9, 2015 was A.T. engaged in unlawful activity of any sort.

125.    The Ferguson police cars quickly accelerated across the street from the parking lot to the Andy Wurm lot in an unsafe manner.

126.    All of the video evidence provided by the Parties during the criminal prosecution demonstrates that A.T. was acting in a calm and reasonable manner before the officers accelerated across the street.

127.    Knowing that he had done nothing wrong and fearing for his safety, A.T. ran from the lot.

128.    Prior to running, A.T. did not hear any commands from the Defendant officers.

129.    In fact, the Defendant officers made no commands before A.T. began to run.

130.    Several seconds after he began top run., A.T. stopped running and entered the Subway restaurant in the parking lot adjacent to the Andy Wurm lot.

131.    Defendant Dilworth pursued A.T. and encountered A.T. in the Subway restaurant.

132.    A.T. immediately complied with Defendant Dilworth's command and loudly announced to Defendant Dilworth that he (A.T.) was a minor.

133.    Defendant Dilworth replied "I don't care."

134.    Although Defendant Dilworth was nearly twice A.T.'s size, Defendant Dilworth threw A.T. to the ground and placed all of his weight on A.T.'s back

135.    Defendant Dilworth, with defendant Moulton's help, arrested A.T.

136.    Defendant Moulton held A.T.'s left arm while Defendant Dilworth held A.T.'s right arm. Defendant Moulton and Defendant Dilworth walked A.T. to an FPD police vehicle. Defendant Moulton remained with the Defendant officers as they continued to arrest Plaintiffs.

137.    A St. Louis Post-Dispatch photographer captured a photograph of Defendant Moulton assisting with A.T.'s arrest. *See* Complaint, Doc. 1, Exhibit U, Photograph of A.T.'s arrest taken by Robert Cohen.

138.    A.T. was initially cited for Destruction of Property, but the attorney for St. Louis County Juvenile Officer declined to pursue charges.

**U.S. Department of Justice Report**

139.    On March 4, 2015, the United States Department of Justice Civil Rights Division published *Investigation of the Ferguson Police Department*. *See* Complaint, Doc. 1, Exhibit Q.

140.    The 105-page report detailed myriad Constitutional violations by the FPD.

141.    Under the section titled *Ferguson Police Practices*, the Department of Justice found that the FPD engaged in (1) "a pattern of Unconstitutional Stops and Arrests in Violation of the

Fourth Amendment," (2) "a pattern of First Amendment violations," and (3) "a pattern of excessive force in violation of the Fourth Amendment." *Id*. at 15-41.

142.    The Department of Justice specifically cited the instant matter as an example of FPD's pattern of First Amendment violations.  The report states:

> On February 9, 2015, several individuals were protesting outside the Ferguson police station on the six-month anniversary of Michael Brown's death. According to protesters, and consistent with several video recordings from that evening, the protesters stood peacefully in the police department's parking lot, on the sidewalks in front of it, and across the street. Video footage shows that two FPD vehicles abruptly accelerated from the police parking lot into the street. An officer announced, "everybody here's going to jail," causing the protesters to run. Video shows that as one man recorded the police arresting others, he was arrested for interfering with police action. Officers pushed him to the ground, began handcuffing him, and announced, "stop resisting or you're going to get tased." It appears from the video, however, that the man was neither interfering nor resisting. A protester in a wheelchair who was live streaming the protest was also arrested. Another officer moved several people with cameras away from the scene of the arrests, warning them against interfering and urging them to back up or else be arrested for Failure to Obey. The sergeant shouted at those filming that they would be arrested for Manner of Walking if they did not back away out of the street, even though it appears from the video recordings that the protesters and those recording were on the sidewalk at most, if not all, times. Six people were arrested during this incident. **It appears that officers' escalation of this incident was unnecessary and in response to derogatory comments written in chalk on the FPD parking lot asphalt and on a police vehicle. FPD's suppression of speech reflects a police culture that relies on the exercise of police power—however unlawful— to stifle unwelcome criticism**. *Id*. at 27-28. (Emphasis added).

143.    Ferguson continued to pursue this matter for over 10 months after the Department of Justice's Report.

**CAUSES OF ACTION**

**COUNT I**

**UNREASONABLE SEIZURE BY ARREST AND DETENTION IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION COGNIZABLE UNDER 42 U.S.C. § 1983, ALL PLAINTIFFS AGAINST ALL INDIVIDUAL DEFENDANTS**

For their cause of action against the individual Defendants in Count I, Plaintiffs state:

144.    By this reference, Plaintiffs incorporate each and every allegation and averment set forth in the preceding paragraphs as though fully set forth herein.

145.    Defendant Dilworth, as the scene supervisor, organized and directed the actions of the other Defendant officers.

146.    The Defendant officers, acting alone and acting together and in concert, both following the direct commands of Defendant Dilworth and acting on their own volition, arrested and detained the Plaintiffs.

147.    The arrest and detention – seizure – of each Plaintiff was unreasonable because there was no probable cause to believe that any of the Plaintiffs or each of them, had committed an offense.

148.    The seizure of each Plaintiff was in violation of the Fourth and Fourteenth Amendments to the Constitution of the United States.

149.    As a direct result of the conduct of Defendants and each of them, each Plaintiff suffered damages.

150.    The acts of Defendants Dilworth, Boyd, Burnes, Hammond, Mace, O'Brien, and Moulton described herein were intentional wanton, malicious, and/or were callously indifferent to the rights of Plaintiffs, and each of them, thus entitling each Plaintiff to an award of punitive damages against each Defendant.

151.    Each Plaintiff who prevails is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs pray for judgment in favor of each Plaintiff and against Defendants Dilworth, Boyd, Burnes, Hammond, Mace, O'Brien, and Moulton for compensatory

damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

## COUNT II

### RETALIATION AGAINST ALL PLAINTIFFS BY ALL INDIVIDUAL DEFENDANTS FOR EXERCISING THEIR RIGHTS UNDER THE FIRST AMENDMENT TO THE UNITED STATES CONSTITUTION COGNIZABLE UNDER 42 U.S.C. § 1983

For their cause of action against the individual Defendants in Count II, Plaintiffs state:

152.    By this reference, Plaintiffs incorporates each and every allegation and averment contained in the preceding paragraphs of this Complaint as though fully set forth herein.

153.    The Plaintiffs and each of them, were engaged in First Amendment protected activity when they were peacefully protesting.

154.    Some individual or individuals made First Amendment protected statements, verbally and in writing (on public spaces, in chalk) that were critical of the police and critical of Defendant Dilworth in particular.

155.    Assuming *arguendo* that the anti-police statements written in Crayola chalk are not protected by the First Amendment, the Defendant officers still would not have had probable cause to make any arrests because the Defendant officers and Defendant Moulton did not know who had written the critical statements. Yet even without this essential information, Defendant officers and Defendant Moulton made custodial arrests of Plaintiffs as retaliation for the unknown persons' critical statements. Defendants did not care who they arrested, as evidenced by a Defendant officer yelling "Everybody here's going to jail!"

156.    The arrest and detention – seizure – of each Plaintiff was unreasonable because there was no probable cause to believe that any of the Plaintiffs or each of them, had committed written critical statements.

157.    Defendants targeted Plaintiffs for expressing Plaintiffs' First Amendment right to protest and assembly.

158.    Defendants targeted Plaintiffs because Defendants believed that Plaintiffs also exercised their First Amendment rights to criticize the police.

159.    The seizure of each Plaintiff was in violation of the First and Fourteenth Amendment to the Constitution of the United States.

160.    As a direct result of the conduct of Defendants and each of them, each Plaintiff suffered damages.

161.    The acts of Defendants Dilworth, Boyd, Burnes, Hammond, Mace, O'Brien, and Moulton described herein were intentional wanton, malicious, and/or were callously indifferent to the rights of Plaintiffs, and each of them, thus entitling each Plaintiff to an award of punitive damages against each Defendant.

162.    Each Plaintiff who prevails is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs pray for judgment in favor of each Plaintiff and against Defendants Dilworth, Boyd, Burnes, Hammond, Mace, O'Brien, and Moulton for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

## COUNT III

### PLAINTIFFS AGAINST ALL DEFENDANTS, INCLUDING THE CITY OF FERGUSON, FOR UNLAWFUL SEIZURE OR IN THE ALTERNATIVE FOR DUE PROCESS VIOLATION ARISING FROM THE PROSECUTION OF PLAINTIFFS IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION COGNIZABLE UNDER 42 U.S.C. § 1983

For their cause of action against the individual Defendants in Count III, Plaintiffs state:

163.    Plaintiff incorporates by reference the allegations and averments contained in the preceding paragraphs of this Complaint as though fully set forth herein.

164.    Plaintiffs Phillips, Blue, De Mian, Lohmann, Tolliver, Jr., and Williams were prosecuted for various offenses by the Defendant City of Ferguson, based on statements of, and in concert with, the individual Defendants.

165.    Plaintiff A.T. was arrested and charged by the Defendant City of Ferguson, based on statements of, and in concert with, the individual Defendants.

166.     The City of Ferguson acted pursuant to its policymaker, Prosecuting Attorney Stephanie Karr, on the matter of prosecutions for violations of the Ferguson Code. As such, Ferguson is culpable pursuant to *Monell v. N.Y. Dep't of Soc. Svcs*, 436 U.S. 658 (1978) and its progeny.

167.    In the alternative, Ferguson is liable for having a pattern and practice of unlawful prosecutions and court actions. *See* Complaint, Doc. 1, Exhibit Q.

168.    Among the reasons that Ferguson engages in unlawful prosecutions is the desire of the City to support the decisions of its police officers.

169.    Ferguson and the Prosecuting Attorney support Ferguson police officers without regard to whether the officers have been truthful and without regard to whether any alleged offense has any basis in fact or the law.

170.     The performance of the prosecutorial function of Ferguson is so deficient as to constitute a violation of the due process rights of defendants, such as Plaintiffs, in violation of the Fourteenth Amendment to the United States Constitution.

171.    In the alternative, the prosecution and/or charging of Plaintiffs Phillips, Blue, De Mian, Lohmann, Tolliver, Jr., Williams, and A.T. was so devoid of legal or factual merit and/or

was motivated by the desire to protect the Defendant officers and the City against liability for the unlawful arrests and detentions of Plaintiffs Phillips, Blue, De Mian, Lohmann, Tolliver, Jr., Williams, and A.T. that the prosecution was a violation of the Fourth Amendment to the United States Constitution. *See Manuel v. Joliet, Il*, No. 14-9496 (cert. granted January 15, 2016).

172.     The acts of Defendants Dilworth, Boyd, Burnes, Hammond, Mace, O'Brien, and Moulton described herein were intentional wanton, malicious, and/or were callously indifferent to the rights of Plaintiffs, and each of them, thus entitling each Plaintiff to an award of punitive damages against each Defendant.

173.     Each Plaintiff who prevails is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs for judgment in favor of each Plaintiff and against Defendants Dilworth, Boyd, Burnes, Hammond, Mace, O'Brien, Moulton, and Ferguson for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

## COUNT IV

### PLAINTIFFS CHRISTOPHER PHILLIPS, HEATHER DE MIAN, AND BRIAN LOHMANN, AGAINST ALL INDIVIDUAL DEFENDANTS FOR SEIZURE IN RETALIATION FOR EXERCISE OF FIRST AMENDMENT PROTECTED ACTIVITY – RECORDING POLICE ACTIVITY IN A PUBLIC SPACE-- COGNIZABLE UNDER 42 U.S.C. § 1983

For their cause of action against the individual Defendants in Count IV, Plaintiffs state:

174.     Plaintiffs incorporate by reference the allegations and averments contained in the preceding paragraphs of this Complaint as though fully set forth herein.

175.     Plaintiffs Phillips, De Mian, and Lohmann, were engaged in lawful First Amendment activities when they observed and recorded the actions of the Defendant officers who were performing their duties in public.

176.    Defendants Dilworth, Boyd, Burnes, Hammond, Mace, and O'Brien arrested Plaintiffs Phillips, De Mian, and Lohmann, seized their recording devices, detained them, and initiated charges against them in retaliation for the exercise of their rights under the First Amendment.

177.    Defendant Moulton assisted Defendant officers in effectuating the arrests.

178.    The Defendants were motivated to arrest, detain, seize the property of, and charge the Plaintiffs because they recorded the Defendant officers.

179.    The Defendants did not have probable cause to interrupt, arrest, detain, seize the property of, or charge the Plaintiffs, and the intended effect of doing so was to chill the Plaintiffs' rights under the First Amendment.

180.    Interrupting, arresting, detaining, seizing the property of, and charging persons such as the Plaintiffs would chill persons of ordinary firmness from observing and recording police activity.

181.    The acts of the Defendants were in violation of an order of this Court enjoining officers of the Defendant City of Ferguson "from enforcing a policy or custom of interfering with individuals who are photographing or recording at public places but who are not threatening the safety of others or physically interfering with the ability of law enforcement to perform their duties." *See* Complaint, Doc. 1, Exhibit B, *Mustafa v. County of St. Louis, et. al.* 4:14CV01410 JAR (E.D. Mo. Aug. Nov. 21, 2014) (Order of Judge enjoining the City of Ferguson).

182.    As a result of the acts of the Defendants, the Plaintiffs suffered damages to include being seized and deprived of their freedom, being detained in custody, and emotional distress.

183.    The acts of Defendants Dilworth, Boyd, Burnes, Hammond, Mace, O'Brien, and Moulton described herein were intentional wanton, malicious, and/or were callously indifferent to

24

the rights of Plaintiffs, and each of them, thus entitling each Plaintiff to an award of punitive damages against each Defendant.

184.    Each Plaintiff who prevails is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs Christopher Phillips, Heather De Mian, and Brian Lohmann, pray for judgment in favor of each Plaintiff and against Defendants Dilworth, Boyd, Burnes, Hammond, Mace, O'Brien, and Moulton for compensatory damages, punitive damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

## COUNT V

### ALL PLAINTIFFS AGAINST THE DEFENDANT CITY OF FERGUSON FOR VIOLATION OF THE CONSTITUTIONAL RIGHTS OF EACH PLAINTIFF AS MORE FULLY DESCRIBED HEREIN AND COGNIZABLE UNDER 42 U.S.C. § 1983

For their cause of action against Defendant City of Ferguson in Count V, Plaintiffs state:

185.    Plaintiff incorporates by reference the allegations and averments contained in the preceding paragraphs of this Complaint as though fully set forth herein.

186.    After Michael Brown was killed, the media, the public, and the United States Department of Justice scrutinized the Ferguson Police Department, the Ferguson Municipal Court, and the Ferguson Prosecuting Attorney.

187.    The Department of Justice Report is a scathing and detailed description of the lawlessness that pervaded the operation of the Ferguson Police department, the Municipal Court, and the Prosecuting Attorney.

188.    In the Report's aftermath, the Court Clerk was terminated, and the Municipal Court judge resigned.

189.    The Ferguson Prosecuting Attorney remains and was the driving force behind Plaintiffs' prosecution.

190.   The events giving rise to this cause were examined by the Justice Department and the actions of the police were questioned if not condemned.

191.   The Ferguson Police Department was roundly criticized in the wake of the death of Michael Brown for many practices, but specifically for the practice of arresting people who were recording police activities.

192.   This Court entered an Order enjoining the Ferguson Police from arresting people who recorded the police in public spaces. *See* Complaint, Doc. 1, Exhibit B, *Mustafa v. County of St. Louis, et. al.* 4:14CV01410 JAR (E.D. Mo. Aug. Nov. 21, 2014) (Order of Judge enjoining the City of Ferguson).

193.   Despite the injunction, the Ferguson police arrested three individuals who were actively recording them, one of whom is a professional documentarian and photo journalist.

194.   The practice of taking enforcement action against individuals who sought to record police activity persisted before Michael Brown was killed, as reflected in the Justice Department report. *See* Complaint, Doc. 1, Exhibit Q at 26 - 28.

195.   The abusive, authoritarian actions by Ferguson police officers occurred prior to Michael Brown's death and have not abated after.  Instead in reaction to the well-founded criticism against FPD, FPD has doubled down and is equally or more abusive, authoritarian and oppressive than it was prior to Michael Brown's death.

196.   Defendant Ferguson failed to train the officers of the Ferguson Police Department in the limits of arrest powers in the context of protests or other First Amendment protected activity.

197.   Defendant Ferguson knew that the officers of the department would continue to encounter protesters after Michael Brown died and knew that, certainly in the context of recording

police activities but also in others, that the officers were not properly instructed in the limits of police power when the police encounter protesters or others engaged in protected activity.

198.    The Prosecuting Attorney had the knowledge and the power to influence FPD actions when encountering individuals engaged in protected activity.  Instead of taking steps to ensure that the police acted lawfully, the Prosecuting Attorney has ratified, and thus encouraged, the misconduct of the police and enabled the police by vigorously prosecuting when the facts and law did not support a prosecution, as in this matter.  As previously alleged, the Prosecuting Attorney is the policymaker for the prosecution function in the City of Ferguson.

199.    Moreover, the police in this case simply lied in their reporting of the events.  Those lies went unchallenged by the Prosecuting Attorney despite the efforts of Plaintiffs over the course of almost one year to demonstrate the prevarications and stop the prosecution of Plaintiffs.

200.    The Department of Justice noted that Ferguson Prosecuting Attorney has previously allowed an FPD officer to testify without telling opposing counsel that said officer "had previously been found untruthful during an official FPD investigation." *Id*. at 44.

201.    That officer is Defendant Boyd.

202.    The unlawful practices of the Ferguson police have been pervasive over time but have been particularly obvious in the wake of Michael Brown's death.

203.    Defendant Ferguson knew that Ferguson police officers would encounter protesters, such as Plaintiffs, but did not instruct, train or supervise the performance of the officers in protester encounters.  On the contrary, Ferguson has ratified the misconduct of its officers.

204.    Defendant Ferguson has been, in its failures, deliberately indifferent to the rights of those civilians with whom the police would interact and the failures to act were the direct and proximate cause of the malfeasance described herein.

205.    In the alternative, the Defendant officers knew or suspected that their actions toward the Plaintiffs were unlawful but Defendant officers committed the acts confident that Defendant officers could write the reports in a way to inculpate the Plaintiffs, that Defendant officers could lose or destroy evidence that would contradict Defendant officers' lies and that the Ferguson Prosecuting Attorney would protect Defendant officers by prosecuting those who were falsely arrested and charged.   Moreover, Defendant officers knew that the Department commanders would not take adverse action as a result of the Defendant officers' misconduct.

206.    The Defendant officers were confident in the foregoing state of affairs because they had long operated under the pervasive patterns and practices of the department and the City, and Defendant officers' experiences taught them that their misconduct would not be challenged at any level of the City.

207.     The patterns and practices of the Defendant Ferguson were the cause of the misconduct of the officers more fully described herein.

208.    As a result of the acts of the Defendant Ferguson, the Plaintiffs suffered damages to include being seized and deprived of their freedom, being detained in custody, being falsely prosecuted, and emotional distress.

209.    Each Plaintiff who prevails is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988.

WHEREFORE Plaintiffs pray for judgment in favor of each Plaintiff and against Defendant Ferguson for compensatory damages, attorneys' fees, expenses, costs, and any other relief this Court deems just and appropriate.

Respectfully Submitted,


KHAZAELI WYRSCH STOCK, LLC

*/s/ Javad M. Khazaeli*
James R. Wyrsch (#53197MO)
Javad Khazaeli (# 53735MO)
911 Washington Avenue, Suite 211
St. Louis, Missouri  63101
Tel: 314-288-0777
Fax: 314-400-7701


ARCHCITY DEFENDERS

Thomas B. Harvey (# 61734MO)
Blake A. Strode (# 68422MO)
Edward Hall (# 0012692IA)

ArchCity Defenders
812 N. Collins St.
St. Louis, MO 63102
Tel: 855-724-2489
Local: 314-361-8834
Fax: 314-925-1307

CERTIFICATE OF SERVICE

I certify that a copy of the foregoing was served upon all parties of record by filing it with the court's CM/ECF system this 20th day of July, 2016.

/s/ James R. Wyrsch